UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **TRAVIS SCHMOOK** | **CIVIL ACTION** |
| **VERSUS** | |
| **THE KANSAS CITY SOUTHERN RAILWAY COMPANY, et al.** | **NO. 20-309-JWD-SDJ** |

# ORDER

Before the Court are the following two motions: (1) a Motion to Compel and for Sanctions (R. Doc. 8), filed by Defendant The Kansas City Southern Railway Company on September 14, 2021; and (2) a Motion for Protective Order (R. Doc. 17), filed by Plaintiff, Travis Schmook, on October 22, 2021. Plaintiff opposes Defendant's Motion to Compel (R. Doc. 18), filing his Opposition on the same day as his Motion for Protective Order.[1] Plaintiff's Motion for Protective Order also is opposed (R. Doc. 21). For the reasons set forth below, Defendant's Motion to Compel is **granted**, and Plaintiff's Motion for Protective Order is **denied**.

## I.   DEFENDANT'S MOTION TO COMPEL

In its Motion to Compel, Defendant seeks (a) an order compelling Plaintiff to be deposed again, (b) an order compelling Plaintiff to provide supplemental responses to certain previously-propounded written discovery, and (c) and an award of reasonable costs and attorney's fees associated with filing this Motion as well as costs for re-deposing Plaintiff.[2] The Court addresses each request, in turn, below.

---

[1] On October 12, 2021, Plaintiff filed a motion seeking an extension of time to file an opposition to Defendant's Motion to Compel (R. Doc. 14). The Court granted Plaintiff's request on October 19, 2021 (R. Doc. 16).
[2] R. Doc. 8 at 1.

### A. Deposition of Plaintiff

The deposition of Plaintiff was taken on August 13, 2021.[3] However, as alleged by Defendant in its Motion to Compel, "[t]he deposition had to be aborted due to the obstructive conduct of Plaintiff's counsel who, throughout the deposition, lodged argumentative, instructive objections and prevented [Defendant] from obtaining necessary testimony."[4] Per Defendant, "[t]hese obstructive objections culminated to Plaintiff's counsel explicitly instructing Plaintiff to not answer [Defendant's] deposition questions in contravention of Rule 30(c)(2) of the Federal Rules of Civil Procedure."[5] As a result, "Plaintiff's refusal to cooperate and abide by the deposition discovery rules and allow the deposition to proceed unimpeded, left [defense] counsel with no other option than to prematurely terminate the deposition and to turn to the Court for relief."[6] In his Opposition to Defendant's Motion to Compel,[7] Plaintiff responds that "[d]efense counsel repeatedly rejected plaintiff's truthful and good faith responses" and "engaged in examination tactics that were argumentative, oppressive, harassing, and embarrassing."[8] Because Plaintiff's initial deposition was terminated prematurely due to Plaintiff's counsel's alleged interference and inappropriate objections and instructions to his client, Defendant now seeks an order compelling the re-deposition of Plaintiff. The Court notes that, in his Opposition, Plaintiff indicates his willingness to schedule another date to continue his deposition.[9]

According to Rule 30(c)(2) of the Federal Rules of Civil Procedure:

> An objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the

---

[3] R. Doc. 8-1 at 1.
[4] *Id*.
[5] *Id.*
[6] *Id.* at 2.
[7] Of note, Plaintiff's Opposition to Defendant's Motion to Compel is almost identical to his Motion for Protective Order, and the memoranda in support of this Opposition and his Motion for Protective Order are virtually identical.
[8] R. Doc. 18 at 1.
[9] *Id.* at 2.

examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

"Appropriate objections include the form of the question or the responsiveness of an answer." *Bordelon Marine, Inc. v. F/V KENNY BOY*, Nos. 09-3209, 09-6221, 2011 WL 164636, at *5 (E.D. La. Jan. 19, 2011) (citing Fed.R.Civ.P. 30(c) Advisory Committee's Note, 1993 amendments). "Directions to a deponent not to answer a question can be even more disrupting than objections." *Id.* (quoting Fed.R.Civ.P. 30(c) Advisory Committee's Note, 1993 amendments). "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).

Here, Plaintiff's counsel failed to comport with the requirements of Rule 30, lodging inappropriate objections and instructing his client not to answer, even though one of the three limited, enumerated situations for doing so set forth in Rule 30(c)(2) was not present. While the Court will not discuss each instance separately, it finds the following line of questioning of Plaintiff by defense counsel illustrative:

> Q. Well, you didn't notify the railroad after this incident happened; is that correct?
>
> A. I don't remember. I – I don't remember if I called the railroad or not.
>
> Q. Well, there's no – There's no record of you calling. Do you dispute that?
>
> MR. SCOTT: Let me object. He – Asked and answered. He says he didn't know if he contacted them or not, so why would he know if there was a record of him contacting them?
>
> EXAMINATION BY MR. TALLEY:
>
> Q. Assuming there's no record of it, do you dispute that?
>
> MR. SCOTT: Objection. Still – Same objection. It's been asked and answered.

EXAMINATION BY MR. TALLEY:

Q. You can answer. Do you dispute that?

MR. SCOTT: Well, I'm going to object. There's nothing –

THE WITNESS: I don't –

MR. SCOTT: Hold on. There's nothing to answer. He says he does not remember. How can he dispute whether there's a record of it if he doesn't know whether he talked with anybody?

MR. TALLEY: I'm not asking – I'm not asking him to dispute whether there's a record of it. I'm asking him if he – if there's no record, does he dispute that?

MR. SCOTT: Again, that – I'm sorry, Counsel. That's not logical. He says he does not remember whether he contacted them or not. So are you asking him to assume that there's no record? I'm – I'm confused as to –

MR. TALLEY: Yes. I'm asking him if there's no record, does he dispute that?

MR. SCOTT: And he can't know that, Counsel, if he doesn't remember whether he contacted them or not.

MR. TALLEY: Well, I'm entitled to cross-examine him on that.

MR. SCOTT: And I'm entitled to – And I'm entitled to instruct him as to whether to answer a question or not if it's – if it's properly presented or not, and I'm instructing – I'm – I'm instructing him to stand on the answer he gave, which is he does not recall whether he contacted them.[10]

Here, Plaintiff's counsel did not allow defense counsel to effectively question the deponent, even going so far as to instruct Plaintiff not to answer a question. As the issue of whether Plaintiff notified Defendant of the underlying incident after it occurred is relevant to this case, it is within the permitted scope of deposition questions. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case …"). Because none of the limited circumstance enumerated in Rule 30(c)(2) allowing for an instruction to a deponent not to answer a question were present

---

[10] R. Doc. 8-2 at 13-22 (51:15-53:25).

here, Plaintiff's counsel's instruction was inappropriate. Moreover, this is simply one of multiple instances in which Plaintiff's counsel did not allow defense counsel to effectively question Plaintiff and did not adhere to Rule 30, which mandates that an objection "must be stated concisely in a nonargumentative and nonsuggestive manner" and that while the objection "must be noted on the record … the examination still proceeds." Fed. R. Civ. P. 30(c)(2); *see also Hall v. Clifton Precision, a Div. of Litton Sys., Inc.*, 150 F.R.D. 525, 528 (E.D. Pa. 1993) ("There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers."). This flouting of the Rules of Civil Procedure will not be tolerated. *See, e.g., Hatch v. La. ex rel. La. Dep't of Educ.*, No. 10-548, 2012 WL 2118128, at *3 (M.D. La. June, 11, 2012) (allowing for re-deposition of witnesses who were improperly instructed by counsel not to answer certain questions); *Sigur v. Emerson Process Mgmt.*, No. 05-1323, 2006 WL 8434079, at **4-5 (M.D. La. June 7, 2006) (reprimanding plaintiff's counsel for his frequent disruptions and "long argumentative and suggestive objections" and instructing him to "comply with the dictates of Rule 30(d) during the continuation of [plaintiff's] deposition").

Because of Plaintiff's counsel's inappropriate and obstructive behavior—including instructing Plaintiff not to answer certain questions and making inappropriate, suggestive objections—the Court finds that Defendant is entitled to re-depose Plaintiff. Within **14 days** of the date of this Order, Plaintiff is instructed to provide defense counsel available dates on which his deposition can be taken.

B.   **Defendant's Discovery Requests**

"[A] party served with written discovery must fully answer each interrogatory or document request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and affirmatively explain whether any responsive information or documents have been withheld." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018) (internal quotations and citation omitted). If a party fails to respond fully to discovery requests in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Federal Rule of Civil Procedure 37. *See, e.g., Lauter v. SZR Second Baton Rouge Assisted Living, LLC*, No. 20-813, 2021 WL 2006297 (M.D. La. May 19, 2021).

In its Motion to Compel, Defendant also seeks an order compelling Plaintiff to provide supplemental responses to discovery requests previously propounded on Plaintiff, specifically Request for Production No. 5 and Interrogatory No. 6.[11] Each of these requests is discussed, in turn, below.

  1.   **Request for Production No. 5**

As propounded by Defendant, Request for Production No. 5 states:

Please produce any and all photographs, charts, drawings, video tapes, surveys, sketches, models, diagrams or other graphic representation or documents in your possession which depict the vehicles, vicinity, and/or area in which the alleged accident or incident occurred, particularly including, but not limited to, any and all photographs depicting the alleged defects in the roadway and/or the railroad tracks. Please note that this request is not limited to the date of the accident, but includes

---

[11] R. Doc. 8 at 1.

any period of time whether before or after the accident, continuing to the present date.[12]

Plaintiff responded that he "is not in possession of any photographs."[13] However, as asserted by Defendant in its Motion to Compel, Plaintiff testified in his deposition that he took photographs and videos of the accident scene.[14] The Court agrees that Plaintiff's deposition testimony does indicate that Plaintiff took a video of the area where the accident occurred at some point, though it is unclear whether Plaintiff still has access to that video.[15] Based on this deposition testimony, Plaintiff is instructed to supplement his response to Request for Production No. 5, **within 14 days** of the date of this Order. To the extent Plaintiff has any photographs or videos of the area where the accident occurred, he is to produce them; if none exist, he must so certify to Defendant.

    **2.    Interrogatory No. 6**

As requested in Interrogatory No. 6:

> Please state the name, address and telephone number of each person known to you who witnessed your alleged accident or otherwise has knowledge or information of the facts alleged in your Petition, briefly summarize the source and nature of that knowledge for each individual identified, and state whether or not a statement has been obtained from that individual.[16]

In response, Plaintiff identified only himself and provided his address.[17] However, as pointed out by Defendant, Plaintiff, in his deposition, identified several individuals who were present at the scene of the accidents "mere moments" after the accident occurred, "including neighbors and his own nephew."[18] Plaintiff's deposition testimony indicates that Plaintiff spoke to a resident living in a house near the scene of the accident and that his nephew and a driver returned to the scene of

---

[12] R. Doc. 8-3 at 4.
[13] *Id.*
[14] R. Doc. 8-1 at 10.
[15] R. Doc. 8-2 at 3-5 (28:6-30:13).
[16] R. Doc. 8-3 at 2.
[17] *Id.* at 3.
[18] R. Doc. 8-1 at 10-11.

the accident later on the day of the accident.[19]  Plaintiff, however, failed to identify either the neighbors or his nephew in his response to Interrogatory No. 6.  As these people may have "knowledge or information of the facts alleged in [Plaintiff's] Petition," Plaintiff is instructed, **within 14 days** of the date of this Order, to supplement his response to Interrogatory No. 6, specifically with regard to the individuals identified in his deposition testimony as being at or near the site of the accident.

  C.  **Defendant's Request for Sanctions**

  Finally, Defendant seeks sanctions against Plaintiff pursuant to Rule 37.[20]  While Plaintiff opposes Defendant's Motion, he does not specifically address the issue of sanctions therein.  According to Rule 37, "[i]f the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).  However, the court "must not order" such a payment if: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

  Defendant's Motion to Compel is being granted.  Thus, given the mandatory language of the Rule, coupled with the absence of any of the mitigating circumstances set forth above, the Court "must" award fees and expenses associated with this Motion to Defendant.  *See Johnson v. City of Baton Rouge*, No. 10-129, 2011 WL 709186, at *1 (M.D. La Feb. 18, 2011) (granting

---

[19] R. Doc. 8-2 at 6-9 (35:22-38:21), 11-13 (49:24-51:4).
[20] R. Doc. 8-1 at 9.

motion to compel and ordering defendants to pay reasonable expenses pursuant to Rule 37(a)(5)(A)). Defendant, however, has not provided any information regarding the amount of expenses and fees incurred. As such, Defendant is instructed to file a subsequent Motion for Attorney's Fees and Costs **within 14 days** of the date of this Order, setting forth the reasonable amount of costs and attorney's fees (including evidentiary support) associated with the filing of this Motion.

## II. PLAINTIFF'S MOTION FOR PROTECTIVE ORDER

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *U.S. v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)). "Good cause exists when disclosure will result in a clearly defined and serious injury to the party seeking the protective order." *Blanchard & Co., Inc. v. Barrick Gold Corp.*, No. 02-3721, 2004 WL 737485, at *5 (E.D. La. Apr. 5, 2004) (citation omitted). The parties seeking the protective order "must articulate the injury with specificity," and "[b]road allegations of harm, unsubstantiated by specific examples do not support a showing of good cause." *Id.* (internal quotations omitted).

In his Motion for Protective Order, Plaintiff:

Plaintiff … seeks a protective order instituting the following restrictions on discovery:

1.

Defense counsel refrains from argumentative, oppressive, harassing, and embarrassing tactics during the course of plaintiff's deposition.

2.

Defense counsel refrains from the practice of rejecting Plaintiff's truthful and good faith responses, in favor of responses which defense counsel unilaterally deems more appropriate, and useful.

3.

Defense counsel refrain [sic] from badgering the Plaintiff into matters which plaintiff makes clear are unknown to him, or beyond the scope of his knowledge.[21]

According to Plaintiff in his Motion, "[d]uring the course of the deposition, the plaintiff gave truthful testimony regarding a number of matters" and that he specifically "testified that he did not know (or remember) the answer to a few of defense counsel's questions."[22] Plaintiff continues that "[d]efense repeatedly rejected those responses, and attempted to 'press' the plaintiff to responses that defense counsel deemed more appropriate."[23] Plaintiff further claims that "[a]t one point, defense went so far as to instruct the plaintiff that he could not answer a question in a certain way."[24] In support of his Motion, Plaintiff cites to certain portions of his deposition—the majority of which also were cited by Defendant in support of its Motion to Compel, interestingly.

---

[21] R. Doc. 17 at 1.
[22] *Id.* at 3.
[23] *Id.*
[24] *Id.* To the best of the Court's knowledge, Plaintiff specifically is referring to the following exchange during Plaintiff's deposition:

> Q. Do you intend on your ex-wives being witnesses in this case at trial?
> A. I – I don't – I don't know, sir. I don't believe so, but I'm not sure.
> Q. Are they going to testify about your injuries?
> A. I – I don't think so.
> Q. Okay. Well, if that changes, you need to let us know. Part of the process of going through this deposition is to find out who your witnesses are.
> ***
> EXAMINATION BY MR. TALLEY:
> Q. Whatever – Part of the process of this deposition and the purpose of the deposition is so that – is for me to get information about the witnesses that you'll rely on to assist your case and – and testify at trial, so you – you can't really say – I'm going to tell you – instruct you, you can't really say that you don't know if somebody's going to be there or not. If they have information about your injuries, you need to let me know that. Do they have information about your injuries?

For example, Plaintiff cites to the following line of questioning in his deposition as evidence that a protective order is needed:

Q. Okay. Tell me about your left shoulder.

A. It – it hurts. It causes numbness in my hand.

Q. And that's today?

A. What's that, sir?

Q. That's today?

A. You're saying as of today?

Q. Yeah.

A. I had – I had surgery on it, so it's – it's feeling a little bit better.

Q. What kind of surgery did you have?

A. Shoulder surgery. I'm – I'm not sure –

Q. Well, I understand –

A. – what they called –

Q. Was it rotator cuff? Was it labral? Was it should replacement? What – What kind of surgery?

A. I believe they went in there, and they fixed part of the rotator cuff and some other stuff. I – I don't know, sir. I'm not a – I'm not a doctor.

Q. Well, I know you're not a doctor, but when you have surgery to you, I would assume that you understood what kind of surgery was being done.

A. Well, I don't – I – I have faith and trust in doctors. I mean they went to school for all that suff. I don't – I don't try to question their – their knowledge. As long as they tell me they can fix me and as long as it gets fixed – I'm not quite sure – I mean –

---

MR. SCOTT: Let me – let me object. Did you instruct my client that he can't say he doesn't know if they're going to be witnesses?
MR. TALLEY: I didn't instruct him that.

R. Doc. 17-1 at 1-2 (11:10-12:19). While defense counsel uses the word "instruct," the Court does not interpret this exchange as defense counsel instructing Plaintiff how to answer a question; rather, defense counsel is informing Plaintiff that if a person has information about his injuries, said counsel is entitled to know.

> Q. Well, if you were – If this was – If this case was in trial right now and there's a jury, what would you tell the jury is the problem with your left shoulder? What are you going to tell the jury?
>
> MR. SCOTT: I object to the form of the question.[25]

According to Plaintiff, this exchange supports a need for a protective order. As argued by Plaintiff:

> He [Plaintiff] makes it clear that he is a lay person, and does not know the exact name of the procedure. Despite this testimony, defense counsel pushes forward. Once again, defense counsel suggests that this testimony would be in sufficient [sic] in the presence of jurors. This conduct was inappropriate.[26]

Plaintiff later continues that while "[d]efense counsel certainly was entitled to inquire as to the extent of plaintiff's knowledge …. [o]nce plaintiff clearly and truthfully expressed the extent of said knowledge, the defense engaged in a series of tactics, that had the effect of belittling and chastising the plaintiff as to what the defense felt he should reasonably know."[27] The Court strongly disagrees. Defense counsel was simply questioning Plaintiff about a surgery he had resulting from the injury allegedly caused by Defendant, a topic which is highly pertinent to this case and certainly within the permitted scope of questioning. While questions were repeated, the Court finds no evidence of anything even approaching belittlement or chastisement. What the Court, however, does find illuminating is the behavior of Plaintiff's counsel during this exchange, which Plaintiff did not include in his Motion. This exchange followed immediately after the one set forth above cited by Plaintiff:

> EXAMINATION BY MR. TALLEY:
>
> Q. You can answer.
>
> MR. SCOTT: Let me object to the form of the question; asked – That's asked and answered. You asked – You talked about his recovery. He told you what he understood as to what the doctors did for his – his shoulder. So if – if that's what

---

[25] R. Doc. 17-1 at 6-7 (64:11-65:24).
[26] R. Doc. 17 at 7.
[27] R. Doc. 17 at 9.

>he wants to tell the jury, that's what he'll tell the jury. But you've got – You have his understanding as to what the doc – as to what the surgery involved.
>
>MR. TALLEY: Lindsey, you're testimony [sic] – testifying.
>
>MR. SCOTT: There's not – There's no testimony, but that's –
>
>MR. TALLEY: That's what you're doing right now.
>
>MR. SCOTT: That's been asked and answered. He's got no more to offer you on that.[28]

To the Court, this exchange not only fails to demonstrate in any way why a protective order is needed, given that defense counsel is not badgering, annoying, or embarrassing Plaintiff with this line of questioning, but also provides further support for Defendant's Motion to Compel the re-deposition of Plaintiff based on the inappropriate behavior of Plaintiff's counsel, as discussed above.

Plaintiff, who bears the burden of proof here, has provided no evidence whatsoever of good cause to grant this Motion. There has been no demonstration of a clearly defined and serious injury to the party seeking the protective order should one not be granted. While the Court agrees that a deponent should not be badgered or harassed during a deposition, finding no evidence that anything even approaching such behavior occurred here, the Court will deny Plaintiff's Motion, finding Plaintiff has failed to show good cause.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Compel and for Sanctions (R. Doc. 8) is **GRANTED**. **Within 14 days** of the date of this Order, Plaintiff is ordered to provide supplemental

---

[28] R. Doc. 8-2 at 18-19 (65:25-66:24).

responses to Defendant's Requestion for Production No. 5 and Interrogatory No. 6 as well as to provide available dates to defense counsel on which he may be re-deposed.

**IT IS FURTHER ORDERED** that Defendant is to file a Motion for Attorney's Fees and Costs, setting forth the expenses associated with the filing of this Motion, within **14 days** of the date of this Order. Should Plaintiff wish to file a response to the Motion, he is instructed to do so **within 14 days** from the date Defendant's Motion is filed.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Protective Order (R. Doc. 17) is **DENIED**.

Signed in Baton Rouge, Louisiana, on November 23, 2021.

*[signature: Scott Johnson]*

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**